Rodney Ray PAUL, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15277.

Court of Criminal Appeals of Oklahoma.

Jan. 6, 1971.

Rehearing Denied April 30, 1971.

Gudgel, Winn & Scott, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Robert D. McDonald, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

Rodney Ray Paul, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County for the offense of Assault and Battery with a Dangerous Weapon; his punishment fixed at six months imprisonment in the county jail and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial revealed that the victim, Harrell Chamblee, had previously been employed by the defendant and co-defendant, Winningham. He had received a three hundred ($300.00) dollar advance from defendant Winningham. Chamblee worked one day and made one sale for the defendants for which he was entitled to a two hundred ($200.00) dollar commission. He testified that on May 9, 1970, the defendant and co-defendant Winningham came to his office and demanded payment of the three hundred ($300.00) dollars. They had a discussion which resulted in Chamblee refusing to pay them directly. The two defendants returned to the office later that day with the third defendant, Curlee. They again demanded payment of the money and upon being refused, the defendant Winningham removed a concealed shotgun from a pair of pants the defendant was carrying on a hanger. Defendant Winningham pointed the weapon at Chamblee and threatened to kill him if he did not pay the money. Chamblee was poked in the stomach and struck about the head and body with the shotgun. He offered to go to his home to obtain a check to pay the money and was allowed to do so, accompanied by defendant Curlee. They returned to the office and Chamblee wrote a three hundred ($300.00) dollar check, but advised that he did not have the money to cover it. Defendant Winningham, upon leaving, said if the check was not good he would come back and kill him.

William Nathan and Jack Willman testified that they were present in Chamblee's office when the defendants arrived and corroborated the testimony of Chamblee. They further testified that while Chamblee had gone to obtain the check, the defendant discharged the gun, striking the wall of the office. Janice Pauley, a secretary, verified the defendants' presence at the scene and heard the scuffle and the gunshot. Officer Hunt testified concerning remov-

ing a slug fragment from the wall of the office. The defendants did not testify, nor offer any evidence.

The defendant's first two propositions of error contend that the trial court erred in refusing his motion for severance. The record reveals that on June 19, 1968, the trial court granted a Motion for Severance and that on September 12th an amended Information was filed and the trial court denied the severance. The trial court again, on the day of trial, overruled a contained Motion for Severance. The defendant argues that his request for severance was denied under authority of 22 O.S. Supp.1969, §§ 436 and 440, which, in effect, was an *ex post facto* application of those sections. Both sections became effective on August 2, 1968, and provide as follows:

"*§ 436.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately, provided that all of the defendants charged together in the same indictment or information are alleged to have participated in all of the same acts or transactions charged.

*§ 440.* All laws or parts of laws in conflict herewith are hereby repealed."

■ We are of the opinon that 22 O.S. Supp.1969, § 436, is a procedure statute relating to the form in which a criminal information may be filed and tried. This section merely states that persons that commit the same criminal act may be tried together. It does not increase the punishment, nor does it change the elements of proof of the crime. The prohibition of *ex post facto* legislation is limited to those laws which pertain to the substantive criminal law, such that their retroactive application increases the punishment for a crime or detrimentally changes the essential elements of a crime. This Court, in

the early case of Ault v. State, 5 Okl.Cr. 360, 115 P. 128, stated:

"The statute requiring appeals relates only to procedure and is not therefore *ex post facto*, and is applicable to and controls appeals in all cases where the trial occurred after the law went into effect."

■ We further observe that the record does not reveal that the defendant presented evidence or argument to the trial court to show how he would be prejudiced by the joinder of defendants. We, therefore, find these propositions to be without merit.

The defendant's next proposition alleges that the trial court erred in failing to take proceedings and in making prejudicial remarks. The conduct of the trial court of which the defendant complains occurred during a recess, prior to the reading of the instructions. The amendment to the case made reveals the following transpired (CM 153a–155c):

"THE COURT: Let the record show that this is being held out of the presence of the jury but in the presence of the defendants. And that we closed this case yesterday after all motions and objections to everything had been made. Now, counsel wants to make an additional objection.

MR. GUDGEL: Let the record reflect that yesterday afternoon between the hours of 2 and 3 o'clock while the Judge was in the process of excusing the jury and while the jury was still in the courtroom, this attorney, the attorney for Paul, approached the bench and requested permission to make a record. At this time the Judge stated that the record could be made but he was leaving the courtroom. Then he directed the reporter not to take any of the comments of this defendant's attorney. He also spoke while the larger portion of the jury was in the room and made the following statements: 'I am not going to hear any more. You make the same motions two or three times. This case has been closed for a long time.' This was said while several of the jurors were in the room. Some of

the jurors stopped and turned around and listened to the Court. There were several attorneys present in the room as well as the prosecutor and several other assistant prosecutors from their office. For the reason this defendant fears that the remarks of the Court could be considered as a rebuke and criticism of defendant Paul's attorney, this counsel feels that the Court's admonition to the jury would be insufficient to remove the error that is in the jurors' minds. At this time, the defendant Paul moves for a mistrial.

MR. FRANSEIN: I want to say, as the representative of the District Attorney's office, that Mr. Gudgel did walk up to the bar asking to make an additional motion. Also present at the bar was Assistant District Attorney Ronnie Shaffer and myself. During this time the statements were made by the court and as the jury was leaving the courtroom, all of the attorneys were standing at the bar and in my honest opinion, if any of the jurors turned and saw what was going on, the jurors did not know who was being rebuked, either the Assistant District Attorneys or the attorney for the defendant. Therefore I feel his motion for a mistrial should not be granted.

THE COURT: Anything else?

MR. GUDGEL: Let the record reflect that I was the first attorney at the bar and I was standing by myself at the time Judge was leaving and talking. In addition to this, let the record reflect that we have not had an opportunity to settle the instructions. They have submitted requested instructions one through 27 and I do not know which instructions are to be given and which ones are to be refused.

THE COURT: We will go into that.

MR. TANNER: Defendant Winningham would adopt the same motion that has been made on behalf of the Defendant Paul.

MR. WARD: I will adopt it on behalf of Defendant Curlee.

THE COURT: Let the motion be overruled. I do not agree with the statement of the facts made by counsel. I do not believe the jury heard anything whatsoever. I do not think they could have told what was going on. The case was ended and I got up to come back in chambers to prepare instructions. He had jumped up and came up four or five times wanting to make an additional record. That's it."

This Court will not speculate as to what parts of the dialogue between the Court and the attorneys that the jury actually heard. This Court has consistently held that trial courts must be very careful to refrain from saying anything which might convey to the jury the impression of its opinion as to the guilt or innocence of the defendant or as to the credibility of a witness. Richmond v. State, Okl.Cr., 456 P.2d 897; Luther v. State, 80 Okl.Cr. 252, 158 P.2d 481; Garrett v. State, 74 Okl.Cr. 78, 123 P.2d 283.

 We are of the opinion that the court's actions did not, in any way, reflect his opinion as to the guilt of the defendant, or his opinion as to the credibility of a witness. A trial court has the inherent right to call recesses at such times as he deems appropriate. We further note that the Court specifically admonished the jury to disregard any conversation between the court and the attorneys following the reading of the instructions (CM 133). We, therefore, find this proposition to be without merit.

 The defendant's next proposition of error states that the court erred in overruling motions for mistrial. He contends that the prosecuting attorney referred to the defendants as "the goons" in his closing argument, which prejudiced the jury. The record does not reveal that the defendant objected to the alleged improper remarks.

In Kidd v. State, 97 Okl.Cr. 415, 266 P. 2d 992, we stated in the seventh paragraph of the Syllabus:

"Where the argument of the prosecutor is taken down by the reporter and reflected in the casemade, and on appeal it is claimed that certain excerpts therefrom constituted improper arguments on the part of the county attorney, but such remarks were not objected to at trial and the court afforded an opportunity of ruling on such objections and where a careful reading of the statements convinces this Court that same did not amount to fundamental error; held, the objections after trial, came too late."

We, therefore, find this proposition to be without merit.

The defendant's final proposition alleges "fundamental error appears in the casemade." He contends that the evidence was insufficient to try and convict him because he was not sufficiently involved in the crime, that the court denied him opportunity to settle the instructions, and that the court erred in denying his requested instructions.

The record reveals that the defendant was involved in the victim obtaining the advance of three hundred ($300.00) dollars, the repayment of which caused the altercation. The defendant and defendant Winningham went to the victim's office and Winningham demanded money. The defendant carried the concealed shotgun when they returned to the office and was present when the assault occurred. He later fired the weapon into the office wall.

 This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Smith v. State, Okl.Cr., 468 P. 2d 807.

 The record further reveals that the defendant did not make any objections as to the court's failure to settle the instructions. The record indicates that the requested instructions would be discussed apparently in Chambers (CM 153b). It does not reveal that the defendant objected to the instructions, nor were any written request for instructions filled in the case until December 13, 1968, some two months from the trial. This Court has repeatedly held that the instructions, when considered as a whole, are sufficient, if when so considered, they fully and correctly state the law applicable to the case. See Richmond v. State, Okl.Cr., 456 P.2d 897; Barber v. State, Okl.Cr., 388 P.2d 320; and Cody v. State, Okl.Cr., 376 P.2d 625.

We are of the opinion that the instructions given, sufficiently cover all material issues of law applicable to the case. We, therefore, find this proposition to be without merit.

For all of the reasons above set forth we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby affirmed.

BRETT, P. J., concurs in results.

NIX, J., concurs.